**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 9th day of May, 2013.**




Robert D. Berger
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LINDEMUTH, INC., | ) | Case No. 12-23055 |
| | ) | Jointly Administered |
| Debtor. | ) | |

**STIPULATION AND AGREED FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001, (II) GRANTING ADEQUATE PROTECTION, AND (III) GRANTING RELATED RELIEF**

*(BY AND BETWEEN DEBTORS AND ALLIANCE BANK)*

Upon the Debtors' *Emergency Motion for an Expedited Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) Authorizing Debtors to Use Cash Collateral and Grant of Adequate Protection* (the "Cash Collateral Motion"), wherein the Debtors moved this Court for, among other things, the entry of an interim and final order authorizing the Debtors' use of cash collateral on an interim and final basis, and after notice and interim hearings on the Motion on November 27, 2012 and January 3, 2013, the entry by this Court of an order (the "First Initial Interim Cash Collateral Order") granting the Motion on an

interim basis, and a final hearing on January 23-24, 2013 (the "Final Hearing"), and after the Interim Hearings and Final Hearing, the Court finds, subject to the terms and conditions hereof, that (i) the relief requested in the Cash Collateral Motion as provided herein is in the best interests of the Debtors, their estates and their creditors; (ii) the relief as provided herein is necessary to provide the Debtors with sufficient cash and liquidity to avoid immediate and irreparable harm during the term of this order; (iii) in accordance with Rule 4001(a), (b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), due and proper notice of the Cash Collateral Motion and the Final Hearing has been given, and no other or further notice is necessary with respect to the relief requested; and (iv) upon the record herein, including, without limitation, statements of counsel and certain of the factual assertions raised in the evidence and testimony presented, after due deliberation thereon, good and sufficient cause exists for the entry of this stipulation and agreed final order granting the Motion on a final basis as set forth herein (the "Agreed Final Order"). Therefore,

**THE COURT HEREBY FINDS AND CONCLUDES that**:

**Background**

A. On November 9, 2012 (the "Petition Date"), the Debtors commenced these Chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Kansas (the "Court").

B. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

C. No Committee has been formed and the Debtors continue to operate as Debtors-in-Possession.

D. The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Chapter 11 Cases, and over the persons and property affected hereby. Consideration of the Cash Collateral Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are Sections 105, 361, 363 and 507 of the Bankruptcy Code, and Bankruptcy Rules 4001(a), (b) and (d) and 6003.

**Prepetition Secured Loans**

E. Debtors have secured loans and mortgages with, among others, ALLIANCE BANK (the "Secured Loan", "Lender" or "ALLIANCE BANK"). **The Debtors have other prepetition lenders with mortgages on real properties of Debtors (other than the real properties which are mortgaged to Lender) and/or with security interests in the associated rents. Stipulations and Agreed Final Orders ("Orders") as to use of those associated rents and adequate protection provided to such other prepetition lenders may be entered by the Court. In the event of any conflict between any of such Orders and this Agreed Final Order between the Debtors and ALLIANCE BANK, as to the use of ALLIANCE BANK'S cash collateral and/or the adequate protection of ALLIANCE BANK, this Agreed Final Order shall supersede and control.**

F. To secure their obligations under the Secured Loans, the various Debtors granted to Lender a mortgage in the respective real properties and a security interest in associated rents (collectively, the "Cash Collateral").

G. Without prejudice to the rights of any other party, the Debtors admit, stipulate, acknowledge and agree as follows:

**Prepetition Loan Documents, Obligations, Collateral, Liens and Adequate Protection Payment to and with ALLIANCE BANK**. Prior to the Petition Date, debtors Lindemuth, Inc. and Kent and Vicki Lindemuth were liable to ALLIANCE BANK for all indebtedness, liabilities and other obligations of said debtors secured by the real properties listed on Exhibit A and the rents therefrom. As of the Petition Date, debtors Lindemuth, Inc. and Kent and Vicki Lindemuth were indebted to ALLIANCE BANK in the amount of $436,383.80 with interest continuing to accrue thereafter at the aggregate per diem rate of $79.0918 (the "ALLIANCE BANK Prepetition Obligation"). To secure the ALLIANCE BANK Prepetition Obligation, debtor Lindemuth, Inc. granted security interests and liens (the "ALLIANCE BANK Prepetition Liens") to ALLIANCE BANK on the certain real properties and the rents thereof. Subject to the terms hereof, the Debtors stipulate and acknowledge that (a) the ALLIANCE BANK Prepetition Liens are valid, binding, enforceable, and perfected liens, subject only to the liens granted herein and the Carve-Out and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (b) the ALLIANCE BANK Prepetition Obligation constitutes a legal, valid and binding obligation of the Debtors. As adequate protection of the ALLIANCE BANK Prepetition Obligation, Debtors shall pay ALLIANCE BANK monthly adequate protection payments of $5,802.15 per month beginning with the month of November 2012 and continuing monthly thereafter on the 10th day of each successive month of this Agreed Final Order (including a monthly tax escrow payment of $1,803.99) directly to Lender; and ALLIANCE BANK shall additionally have the adequate protection set forth in paragraph 7 herein.

H. For avoidance of doubt, the acknowledgements, agreements and stipulations in paragraph G as well as any other agreement or stipulation made between the Debtors and Lender herein shall be binding on the Debtors' estates, creditors and parties in interest unless any such party files an objection to this Agreed Final Order (the "Challenge" or "Challenges") the acknowledgements, agreements and stipulations within thirty (30) days from the filing of this Agreed Final Order (the "Challenge Period"). If no Challenges are made within the Challenge Period, the acknowledgements, agreements and stipulations shall become final without further order of the Court. Notwithstanding anything to the contrary herein, the Debtors reserve all rights pursuant to section 506(a) of the Bankruptcy Code to challenge the extent of the value of any of Lender's interests in its prepetition collateral and further reserves all rights to seek substantive consolidation or related relief to the extent appropriate and allowable. Lender reserves all its

rights under the ALLIANCE BANK Prepetition Obligation and under all documents of the ALLIANCE BANK Prepetition Liens, including seeking recovery of post-petition interest, costs, and attorney fees pursuant to section 506(b) of the Bankruptcy Code, as well as all of its rights to oppose matters referenced herein, including but not limited to valuation, substantive consolidation, or other relief.

### The Debtors' Need for Use of Cash Collateral

I.  An immediate need exists for the Debtors to have access to Lender's Cash Collateral in order to continue their operations, meet their necessary, ordinary course business expenditures, administer and preserve, protect and maximize the value of their estates

J.  The Debtors have requested that, pursuant to Section 363(c) of the Bankruptcy Code, Lender consent to the Debtors' use of its Cash Collateral and the Debtors' use, sale and lease of the other prepetition collateral, pursuant to the terms and conditions of this Agreed Final Order during the Cash Collateral Period (as defined below). The Debtors acknowledge and agree that Lender is entitled to adequate protection pursuant to Sections 361 and 363(e) of the Bankruptcy Code with respect to its respective Cash Collateral and other prepetition collateral, including, without limitation, to compensate Lender for any loss or diminution in the value of its Cash Collateral or other prepetition collateral resulting from the Debtors' use of its Cash Collateral, the use, sale or lease of other prepetition collateral and the imposition of the automatic stay during the Cash Collateral Period.

K.  Subject to the entry, and continued effectiveness, of this Agreed Final Order, Lender has consented to the Debtors' use of its Cash Collateral and use, sale or lease of other prepetition collateral during the Cash Collateral Period under the terms and conditions set out in this Agreed Final Order.

L. The relief requested herein is, subject to the terms and conditions hereof, necessary, essential and appropriate for the continued operations of the Debtors' businesses and the preservation of their estates and the value of the Debtors' businesses.

M. Good and sufficient cause has been shown for the entry of this Agreed Final Order. Among other things, the entry of this Agreed Final Order is in the best interests of the Debtors, their creditors and their estates because it will enable the Debtors to (i) continue operating their businesses and avoid an immediate shutdown of operations, (ii) meet obligations for necessary expenditures, and other operating expenses, (iii) pay necessary fees and professional expenses under the Bankruptcy Code and make payments authorized under other orders entered by the Court, (iv) obtain needed goods and services, (v) retain vendor and tenant confidence, and (vi) maintain adequate cash resources customary and necessary for operations of this size, thereby avoiding immediate and irreparable harm to the Debtors' estates.

N. Notice of the entry of this Agreed Final Order and the relief requested in the Cash Collateral Motion shall be provided according to the procedures set forth in the Motion for Omnibus Notice Procedures for Stipulated Cash Collateral Orders.

O. The Debtors have requested immediate entry of this Agreed Final Order pursuant to Bankruptcy Rule 6004, and Lender has consented to the relief contained herein. Good and sufficient cause has been shown for the entry of this Agreed Final Order.

NOW, based upon the Cash Collateral Motion of the Debtors and the record before the Court with respect to the Cash Collateral Motion made by the Debtors Lender, and good cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED** effective immediately that:

1. As to ALLIANCE BANK, the Cash Collateral Motion is GRANTED with respect to the relief requested therein on the terms and conditions set forth herein and the findings and conclusions above are true in all respects and incorporated by reference in this Agreed Final Order.

2. So long as no breach of the termination provisions pursuant to Paragraph 12 hereof has occurred, this Agreed Final Order shall remain in effect until the earlier of June 30, 2013 or the Effective Date of a Plan of Reorganization (the "Cash Collateral Period"). The Debtors' ability and authorization to use Lender's Cash Collateral during the Cash Collateral Period shall at all times be subject to the termination provisions of Paragraph 12 of this Agreed Final Order.

    (a) During the Cash Collateral Period, the Debtors waive any right to seek relief under the Bankruptcy Code, including, without limitation, under Sections 105(a) and 363(c), to the extent any such relief would in any way restrict or impair the rights and remedies of the Lenders as set forth in this Agreed Final Order; *provided*, *however*, (i) after the occurrence of a termination event set forth in Paragraph 12 hereof, the Debtors may seek entry of an Order authorizing the use of Lender's Cash Collateral over its objection; (ii) at any time, the Debtors may seek to sell the prepetition collateral, subject to all rights and claims of Lender; (iii) at any time, whether a default has occurred or not, Debtors or Lender may seek modification of the amount of payments being made to Lender to the extent lease or other rental revenue is either gained or lost or to the extent unforeseen expenses arise that are necessary to preserve and protect the collateral. For any such modifications sought by Debtors, Debtors shall communicate directly with Lender about the modification sought and the factual basis for the requested

modification and shall provide Lender with documentation of the factual basis, the lease or other rental revenue gained or lost, and/or the unforeseen expenses that have arisen. If the parties cannot agree on consensual modification terms, the Debtors and Lender reserve the right and ability to seek further relief from the Court; and (iv) with respect to sub-paragraphs (i) (ii) and (iii) above, Lender reserves all rights and remedies, under the Bankruptcy Code, this Agreed Final Order or otherwise, including, without limitation, the right to object to any such relief that involves its Cash Collateral or prepetition collateral. If the Debtors, or any other party, dispute or challenge the expiration or termination of the Cash Collateral Period, the procedure for any such objector's remedy shall be limited to requesting a hearing before the Court, with at least five (5) business days' written notice to Lender.

### **Good Faith, Reliance and Conduct**

3. The Debtors, the Lender and their respective agents, advisors and employees have acted in good faith in negotiating, consenting and agreeing to the Debtors' use of Lender's Cash Collateral and use, sale and lease of other prepetition collateral as contemplated and provided by this Agreed Final Order. The negotiation of the terms and provisions of this Agreed Final Order have been conducted at arm's length, and the Court finds that such terms and conditions are fair and reasonable, under the circumstances, and reflect the Debtors' exercise of reasonable business judgment consistent with the Debtors' fiduciary duties.

4. In the event that any Court of competent jurisdiction determines, in a final non-appealable order, that Lender was undersecured or unsecured as of the Petition Date, then, (i) the Debtors' obligations to make all payments and to comply with all other terms and conditions established by this Agreed Final Order shall not terminate or abate, but all such payments paid during the Cash Collateral Period shall be applied to the secured principal amount of the ALLIANCE BANK Prepetition Obligation as of the Petition Date, or as may otherwise be

provided in such order, and (ii) Lender shall be entitled to a hearing before the Court with at least five (5) business days' written notice to the Debtors re-examining the adequate protection of its secured interests in the prepetition collateral and Replacement Collateral (as defined below), and the authority of the Debtors to use Lender's Cash Collateral.

### Authorized Use of Prepetition Lenders' Cash Collateral

5. <u>Cash Collateral</u>. The Debtors are hereby authorized to use Cash Collateral during the Cash Collateral Period, subject to the conditions and limitations set forth herein.

6. <u>Authorized Uses of Cash Collateral</u>. The Debtors may use Cash Collateral during the Cash Collateral Period, as limited by the Budget, to pay the ordinary and reasonable expenses of operating its businesses. Lender's cash collateral covers and funds approximately 1.3% of the Budget and Debtors' right to use Lender's Cash Collateral is limited to 1.3% of the Budget subject to the Budget variance as set out herein.

### Adequate Protection

Adequate Protection in Favor of Lender for the Debtors' Use of Cash Collateral

7. <u>Adequate Protection</u>. On account of the Debtors' use of Cash Collateral, their use, sale or lease of the other prepetition collateral and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, in each case during the Cash Collateral Period, Lender is hereby granted the following adequate protection with respect to Lender's prepetition collateral, pursuant to Sections 361 and 363(e) of the Bankruptcy Code:

(a) <u>Interim Adequate Protection Payments and Tax Escrow Payments</u>. Debtors shall make monthly adequate protection and tax escrow payments to Lender as described above in Paragraphs G.

(b) <u>Currently Existing Reserve/Escrow Accounts</u>. For any prepetition reserve accounts held by Lender, any such reserve account shall be held and not applied by Lender

without further order of the Court; *provided, however*, Debtors and Lender are authorized hereunder to use and apply the Reserve Account Funds in any mutually agreeable manner.

(c) <u>Replacement Collateral and Replacement Liens</u>. The Debtors hereby grant, assign and pledge to Lender valid, perfected and enforceable liens and security interests (the "<u>Replacement Liens</u>") in the rents generated by or in connection with the real property which is subject to ALLIANCE BANK's Prepetition Obligation (collectively, the "<u>Replacement Collateral</u>").

(d) <u>Automatic Perfection of Replacement Liens</u>. The Replacement Liens granted under this Agreed Final Order shall be valid, perfected and enforceable against the Replacement Collateral as of the Petition Date without further filing or recording of any document or instrument or the taking of any further actions, and shall not be subject to dispute, avoidance or subordination.

(e) <u>Priority of Replacement Liens</u>. The Replacement Liens granted hereunder shall be subject and subordinate in priority to (i) any liens, security interests and other encumbrances, existing as of the Petition Date which is determined in an adversary proceeding to be superior to the Lender's liens and encumbrances, (ii) any liens, security interests and other encumbrances that attach to the Replacement Collateral after the Petition Date granted with Lenders' consent, and (iii) the Carve-Out (as defined in Paragraph 17 herein). The Replacement Liens shall be valid and enforceable against any trustee appointed in the Debtors' Chapter 11 Cases, or in any subsequent proceeding affecting the Debtors, including any conversion of any of the Debtors' Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code.

(f) The terms and conditions of the documents of the ALLIANCE BANK Prepetition Liens shall continue in full force and effect unless conflicting with the provisions of

the Agreed Final Order or applicable law, or unless the terms and conditions are modified pursuant to the express written agreement of Lender and Debtors.

(g) U.S Trustee Fees and Taxes. The Debtors shall and hereby agree to pay all quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and all post-petition taxes as and when due.

**The Budget**

8. Budget. Attached to this Agreed Final Order as Exhibit B is a budget (the "Budget") for the period through and including June 30, 2013, which has been prepared by the Debtors. The Budget reflects, on a global and line-item basis, anticipated cash receipts and expenditures and includes all necessary and required expenses which the Debtors expect to incur during the term of the Budget. The Debtors are authorized to use the Cash Collateral only for payment of such items as is set forth in the Budget, with allowance for a ten percent (10%) aggregate and line-item variance on a rolling forward, cumulative basis and also subject to the terms and conditions set forth in this Agreed Final Order and Debtors are also further authorized to use existing cash on hand, to the extent available, to cover any cash shortfalls for expense line items in the Budget as set out herein. Lender's Cash Collateral covers and funds approximately 1.3% of the Budget and Debtors' right to use Lender's Cash Collateral is limited to 1.3% of the Budget subject to the Budget variance as set out herein.

**Disclosure Required of the Debtors**

9. Required Disclosure. As additional adequate protection for the benefit of Lender, the Debtors shall provide Lender the following information during the Cash Collateral Period:

(a) Reporting and Information. Copies of reports, financial statements, income tax returns, and/or information as may reasonably be requested from time to time by Lender, all in form, detail and substance reasonably satisfactory to such Lender;

(b) <u>Communications Regarding Any Asset Sale or Plan of Reorganization</u>. Monthly oral status reports concerning any asset sale(s) or Plan of Reorganization involving any of the Debtors, together with copies of all non-privileged documents including, without limitation, letter(s) of intent, copies of draft and final versions of all consultants' reports, business plans, term sheets, Chapter 11 plan term sheets, draft Chapter 11 plans and similar documents as they become available to the Debtors; <u>provided</u>, <u>however</u>, pursuant to this subparagraph, Lender shall only be entitled to information that pertains to Lender's interest in collateral.

(c) <u>Requests for Additional Information</u>. Within five (5) business days or such other time period agreed to at the time of the request by the parties, the Debtors shall, to the extent possible, provide such requested non-privileged reports, analysis, documents and information as reasonably requested;

(d) <u>Monthly Reports</u>. As soon as available, but in any event within fifteen (15) days after the end of each month, Debtors shall deliver to Lender its respective internally prepared monthly consolidated and consolidating financial statements, along with year-to-date information, along with applicable variance reports for the period measured. Debtors shall also provide regular variance reports comparing budgeted-to-actual data; and

(e) <u>Insurance.</u> Debtors shall continue to maintain all types and amounts of insurance on all the properties subject to the ALLIANCE BANK Prepetition Liens and Replacement Liens as was and is required by the ALLIANCE BANK Prepetition Obligation and the documents of the ALLIANCE BANK Prepetition Liens. Debtors shall insure Lender is designated as a loss payee on all such insurance and shall provide proof of insurance to Lender upon request;

10. <u>Access and Inspection</u>. Upon written notice by Lender, to Debtors and their counsel, the Debtors shall permit the Lender full and reasonable access to inspect the real properties that are subject to ALLIANCE BANK'S Prepetition Liens.

**Accounts**

11. <u>Cash Management Accounts</u>. The Debtors shall maintain the DIP Accounts and cash management system as is currently in place at Kaw Valley Bank.

**Termination of the Debtors' Ability to Use Cash Collateral**

12. <u>Termination Events</u>. The Lender may seek an expedited hearing on no less than two (2) business days written notice seeking to terminate the Debtors' ability to use Lender's Cash Collateral during the Cash Collateral Period: (i) immediately upon the occurrence of any event described in Subparagraphs (a), (b), (c), (d), (e), or (f) below:

(a) the expiration of the Agreed Final Order as provided in Paragraph 2 hereof;

(b) the Debtors' failure to comply with any of the material terms or conditions of this Agreed Final Order;

(c) the modification or extension of this Agreed Final Order, without providing Lender a minimum of five (5) business days prior written notice of the hearing on such modification or extension;

(d) the Debtors fail to remit to Lender any payments required under this Agreed Final Order;

(e) (i) any of the Debtors Chapter 11 Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; (ii) any of the Debtors shall file a motion, or other pleading, seeking dismissal of any of their Chapter 11 Cases under Section 1112 of the Bankruptcy Code, or otherwise; or (iii) a trustee under Chapter 11 of the Bankruptcy Code, or a

responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' businesses (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106 of the Bankruptcy Code shall be appointed or elected in any of the Debtors' Cases; or

(f) the assertion by the Debtors or any party in interest of claims against or any actions adverse to Lender or its rights or remedies hereunder.

Upon the occurrence of a Termination Event with respect to any Lender, as set forth above (and including any applicable cure period), Lender's consent to the Debtors' use of Lender's Cash Collateral shall automatically terminate and the Debtors may not use, sell or lease such Cash Collateral and shall segregate and account for any such Cash Collateral in their possession, custody or control, and shall hold such Lender's Cash Collateral for the exclusive benefit of such Lender, subject to further order of the Court. Notwithstanding the occurrence of a termination event, as set forth above, the Debtors shall (1) be allowed to pay items incurred prior to termination so long as and only to the extent incurred consistent with the Budget and (2) be allowed to seek authorization to use the Cash Collateral.

**Exercise of Remedies by Lender**

13. <u>Limitation on Exercise of Rights and Remedies</u>. Lender shall not take any action during the Cash Collateral Period to seize or take control over any of its Cash Collateral, prepetition collateral, Replacement Collateral or the Debtors' other property, nor shall Lender impose freezes of assets or seek to exercise any alleged right of setoff or recoupment, or exercise any other right or remedy against Lender's prepetition collateral, Cash Collateral, Replacement Collateral or the Debtors' other property during the Cash Collateral Period; <u>provided</u>, that Lender may take any of the foregoing actions after application to, and receiving authority from, the

Court, to the extent necessary, upon a breach or violation by the Debtors of any of the terms or conditions of, or upon the termination of, this Agreed Final Order.

14. <u>Additional Relief</u>. Notwithstanding any provisions hereof, this Agreed Final Order is without prejudice to Lender's right to seek any other or additional relief in, or relating to, the Chapter 11 Cases, including, without limitation, relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code, and the filing of objections and/or claims relating to motions for adequate protection, or the use, sale, lease or other disposition of Lender's prepetition collateral, Replacement Collateral or Cash Collateral. Lender expressly reserves its rights to claim that the provisions of this Agreed Final Order do not constitute "adequate protection" for the purposes of Sections 361 and 363(c) and (e) of the Bankruptcy Code, or otherwise, and to request additional protection over and above the provisions of this Agreed Final Order.

15. <u>No Waiver</u>. Except as expressly set forth herein, no rights of Lender are waived pursuant to, or modified by, this Agreed Final Order. Lender's rights and remedies pursuant to the ALLIANCE BANK Prepetition Obligation and the documents of ALLIANCE BANK Prepetition Liens and this Agreed Final Order shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional rights or remedies. Lender's failure, at any time or times hereafter, to require strict performance by the Debtors of any provisions of this Agreed Final Order shall not waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance herewith. Any failure or delay on Lender's part in the exercise of any of its rights, remedies, claims, powers, benefits or privileges shall not constitute a waiver by Lender, subject Lender to any liability to any entity under this Agreed Final Order or preclude any other or further exercise of any such right or

remedy or the exercise of any other right or remedy. Lender's rights or remedies under this Agreed Final Order shall not be deemed to have been suspended or waived by Lender unless such suspension or waiver is in writing and directed to the Debtors or the Court specifying such suspension or waiver.

16. <u>No Reliance</u>. In the negotiation of this Agreed Final Order, Lender did not, and during the Cash Collateral Period, Lender does not, have any obligation or duty to any other entity to exercise any of its rights, remedies, claims, powers, benefit or privileges. No entity may rely upon any delay or failure or in any way seek to assert a defense to any obligation owing to Lender based on Lender's failure or delay to exercise its rights or remedies.

**Additional Provisions Governing Rights of the Parties**

17. <u>Carve</u>-Out. Lender's right to the liens, claims and collateral (and proceeds thereof) whether constituting the prepetition collateral or established by this Agreed Final Order shall be subject in all respects to: (1) an amount that shall not exceed $77,000 per month (the "<u>Debtor Carve-Out</u>") to be used solely to satisfy: (A)(i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; and (ii) all unpaid and allowed and Court-approved professional fees, expenses and disbursements of any professionals retained by the Debtors. Lender's portion of the Debtor Carve Out shall be limited by the percentage assigned to Lender in Paragraphs 6 and 8 above. For avoidance of doubt, amounts paid by the Debtors to professionals of the Debtors in accordance with the Budget or otherwise shall not reduce the respective amounts of the Carve-Outs, nor shall any payments result in an increase in the amount of the Debtor Carve-Out over the amount set out in subsection (1) above. Nothing contained herein shall limit or impair the Lender's rights to object to any request for compensation submitted by any professional retained by the Debtors or any Committee, all of such rights being expressly preserved.

### Miscellaneous

18. <u>Binding Effect</u>. Unless otherwise provided herein, the provisions of this Agreed Final Order shall amend and replace all prior orders regarding the Cash Collateral, whether oral or written, *nunc pro tunc* to the Petition Date, and be binding upon and inure to the benefit of the Debtors, Lenders, any Committee, and any trustee subsequently appointed for the estate of the Debtors, whether in the Chapter 11 Cases or in the event of a conversion to a case under Chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Agreed Final Order.

19. <u>Force and Effect, Jurisdiction</u>. In the event that any order dismissing any or all of the Chapter 11 Cases is entered pursuant to Section 1112 of the Bankruptcy Code, or otherwise, (a) the ALLIANCE BANK Prepetition Obligation and Replacement Liens granted to or for the benefit of Lender pursuant to this Agreed Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Agreed Final Order until all of the ALLIANCE BANK Prepetition Obligation shall have been indefeasibly paid in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

20. <u>Continuing Effect of Subordination Agreements</u>. Any Subordination Agreements, if any, shall remain in full force and effect, be governed, in all respects, by section 510 of the Bankruptcy Code and shall continue with respect to the liens and security interests granted to Lender under this Agreed Final Order and the ALLIANCE BANK Prepetition obligation.

21. <u>Titles and Headings</u>. The titles and headings in this Agreed Final Order are and shall be without substantive meaning or content of any kind whatsoever.

22. <u>Time of the Essence</u>. Time is of the essence as to all terms, conditions and provisions set forth in this Agreed Final Order.

23. <u>Amendment and Modification</u>. The terms and conditions in this Agreed Final Order may not be amended, altered, modified or affected without the prior written consent of the Debtors and Lender; <u>provided</u>, <u>however</u>, Lender and the Debtors may make non-material modifications or amendments to the Budget relating to Lender's Cash Collateral in a writing signed by both parties without further order of this Court, and all actions taken pursuant to such modified Budget shall be and hereby are expressly authorized hereunder.

24. <u>Immediate Effect</u>. This Agreed Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon execution thereof.

25. <u>Retention of Jurisdiction</u>. The Bankruptcy Court has and will retain jurisdiction to enforce this Agreed Final Order according to its terms.

**IT IS SO ORDERED.**

###

**APPROVED BY:**

<u>s/  Jeffrey A. Deines</u>
Jeffrey A. Deines, KS 20249
Shane J. McCall, #24564
9260 Glenwood
Overland Park, KS 66212
(913) 648-0600; (913) 648-0664 (fax)
jdeines@lcdlaw.com
smccall@lcdlaw.com
Attorneys for Debtors

**APPROVED BY:**

**/s/Timothy H. Girard**
Timothy H. Girard, #13747
WONER, GLENN,
REEDER & GIRARD, P.A.
5611 SW Barrington Court South
P.O. Box 67689
Topeka, KS 66667-0689
(785) 235-5330; (785) 235-1615 (fax)
girard@wonerglenn.com
Attorneys for Alliance Bank

**EXHIBIT A – Property/Mortgage List**

**EXHIBIT B – Global Budget**

*See Support Documents*